UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PETRINA DAVIS-BURNETT,

        Plaintiff,                  Case No.
                                              Hon.

vs.

ASCENSION PROVIDENCE HOSPITAL,
a domestic non-profit corporation, d/b/a
Ascension Providence Hospital Southfield,

        Defendant.
_____/

  James C. Baker (P62668)
  Attorney for Plaintiff
  STERLING ATTORNEYS AT LAW, P.C.
  33 Bloomfield Hills Pkwy., Ste. 250
  Bloomfield Hills, MI 48304
  (248) 644-1500
  jbaker@sterlingattorneys.com
_____/

**COMPLAINT AND JURY DEMAND**

There is no other pending or resolved
civil action arising out of the same transaction
or occurrence alleged in the complaint.

     NOW COMES Plaintiff, PETRINA DAVIS-BURNETT, by her attorney James C. Baker of Sterling Attorneys at Law, P.C., and for her Complaint and Jury Demand against Defendant, Ascension Providence Hospital, submits the following:

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff is an individual residing in Warren, Macomb County, Michigan.

2. Defendant Ascension Providence Hospital is a domestic non-profit corporation doing business in Southfield, Oakland County, Michigan, having a place of business in and employing staff at Ascension Providence Hospital.

3. Plaintiff is a former employee of Defendant.

4. Defendant is an employer as defined by the Elliott Larsen Civil Rights Act, MCL 37.2101, *et seq.*

5. The events giving rise to this case occurred in Oakland County which is within this Court's District and Division.

6. This Court has subject matter jurisdiction of Plaintiff's claims pursuant to 28 USC 1331 (federal question), 28 USC 1343 (civil rights) and 28 USC 1367 (supplemental jurisdiction).

7. The amount in controversy exceeds $75,000, exclusive of interest, costs, and attorney fees.

## GENERAL ALLEGATIONS

8. Plaintiff is a 64-year-old African American woman.

9. On June 20, 1977 Plaintiff began her career with Providence Hospital in Southfield, a career that spanned almost 46 years.

2

10. Plaintiff was fired from her employment with Ascension Providence Hospital Southfield on March 10, 2023.

11. Throughout her career at Providence Hospital, Plaintiff was a hard-working and competent employee.

12. As a result of Plaintiff's dedication and skills, she was promoted to the various positions, serving most recently as Administrative Assistant, assisting her direct supervisor, while also assisting Providence Behavioral Medicine and the Psychiatric Chair of Behavioral Medicine.

13. In addition to her Administrative Assistant role, Plaintiff's original role through her previous six (6) managers was that of time keeper.

14. Plaintiff performed time keeping duties for the past 25 years.

15. A new Inpatient manager was put in place in January 2023.

16. That manager was Caucasian and was racially motivated against African Americans.

17. That manager reported to a Caucasian Director who was racially motivated against African Americans.

18. The manager was also significantly younger than Plaintiff and was motivated to favor younger employees.

19. In February 2023, Plaintiff complained to Human Resources about the new manager, for bullying and harassment that Plaintiff believed was based on race and age.

20. On March 10, 2023, shortly after complaining to HR, Plaintiff was accused of a time punch error for which she was not informed, she was not given the opportunity to correct, and which did not result in a financial loss to Defendant.

21. The time punch error resulted in no financial gain to anyone, nor did Defendant suffer any loss.

22. The Caucasian manager was the initiator of the discipline, which included suspension.

23. The Caucasian Director supported the discipline, including suspension.

24. Initially Plaintiff was not accused of intentional misconduct, yet later that was the reason she was suspended.

25. Plaintiff was told "we're human … humans make mistakes."

26. Other employees considered Plaintiff's conduct to be a "mistake" and the result of "miscommunication."

27. The Caucasian manager and Director alleged that Plaintiff had been removed from her time keeping functions, despite Plaintiff never being told those duties were removed from her.

28. Plaintiff was accused of timecard manipulation.

29. At a minimum, Plaintiff's error was the result of miscommunication; however, evidence supports that race was a motivating factor in the discipline meted out against Plaintiff.

30. For example, the daughter of the Caucasian Director had a relationship with Plaintiff's African American son, and the Director was displeased with that relationship.

31. Plaintiff's son was involved in the time punch error.

32. Defendant's manager and Director used a simple time punch error as a means to discriminate against Plaintiff based on race.

33. Plaintiff's age was also a factor in the discipline, given that predominantly, if not all other employees in the department were much younger than Plaintiff.

34. In 45 years of service, Plaintiff had never received corrective action against her.

35. Yet within two months of a new younger Caucasian manager being assigned, and less than a month after Plaintiff complained about that manager to HR, Plaintiff was not only accused of performing a task that had been taken away from her – without notice – but was accused of illegal conduct and suspended.

36. By imposing the discipline it did against Plaintiff, Defendant violated its own policies and procedures, including its corrective action policies.

37. Because Plaintiff's action was a "mistake" and the result of "miscommunication," Defendant had a corrections process to address errors.

38. That correction process provided that, at worst, Plaintiff's time-keeping mistake should have resulted in a counseling, to include a clarifying counseling and performance steps (i.e., improvement plan) to be put in place.

39. Defendant never followed its correction process; instead it found Plaintiff's conduct willful.

40. Plaintiff was thereafter terminated for a stated reason of "insubordination."

41. Plaintiff had not been insubordinate.

42. Plaintiff had no history of any such similar conduct in her 45+ years with Providence Hospital, yet within a few months, Plaintiff was terminated.

## COUNT I
## RACE DISCRIMINATION AND
## RETALATION IN VIOLATION OF 42 USC 1981

43. Plaintiff incorporates by reference the allegations stated in Paragraphs 1-42, as if fully restated herein.

44. At all material times, Plaintiff was an employee and Defendant was her employer, covered by and within the meaning of 42 USC 1981.

45. Defendant engaged in discriminatory and retaliatory employment practices based on race.

46. Defendant treats and treated African American employees, including Plaintiff, differently, and subjected Plaintiff to unwarranted investigation, discipline, and termination with race being a motivating factor.

47. Defendant, by and through its agents and employees, was predisposed to discriminate against Plaintiff on the basis of race, and acted in accordance with that predisposition.

48. The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of Plaintiff.

49. Defendant's actions were retaliatory for Plaintiff complaining she was treated differently and worse by a Caucasian manager because of her race.

50. As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected, she was selected for pretextual discipline and she was terminated.

51. As a direct and proximate result of the Defendant's wrongful and discriminatory treatment of Plaintiff, she has suffered injuries and damages, including, but not limited to, loss of past, present, and future earnings and earning capacity; loss of the value of fringe and other benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful employment.

52. Defendant's willful conduct against Plaintiff justifies punitive damages as allowed by statute.

## COUNT II
## RACE DISCRIMINATION AND RETALIATION
## IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

53. Plaintiff incorporates by reference the allegations stated in Paragraphs 1-52, as if fully restated herein.

54. Plaintiff was qualified for her position.

55. Defendant discriminated and retaliated against Plaintiff with respect to employment terms, conditions, and privileges due to Plaintiff's race.

56. Defendant engaged in a pattern and practice of race discrimination and retaliation.

57. Defendant's management and/or supervisory employees engaged in racially-motivated workplace behaviors.

58. Defendant terminated Plaintiff after over 45 years of loyal and excellent service.

59. Plaintiff's race was a factor in Defendants' decision to fire her.

60. Defendant's alleged reason for terminating Plaintiff was a pretext for race discrimination and retaliation.

61. Defendant's discrimination and retaliation denied Plaintiff the opportunity for continued employment and adversely affected her

compensation, terms, conditions, and privileges of employment in violation of the Elliott Larsen Civil Rights Act, MCL 37.2101, *et seq*.

62. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injuries and is entitled to damages.

## COUNT III
## AGE DISCRIMINATION AND RETALIATION
## IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

63. Plaintiff incorporates by reference the allegations stated in Paragraphs 1-62, as if fully restated herein.

64. Plaintiff was qualified for her position.

65. Defendant discriminated and retaliated against Plaintiff with respect to her terms, conditions, and privileges of employment due to Plaintiff's age.

66. Defendant engaged in a pattern and practice of age discrimination and retaliation.

67. Defendant terminated Plaintiff after over 45 years of loyal and excellent service.

68. On information and belief, Plaintiff's duties are now performed by a younger person.

69. Defendant terminated Plaintiff for a pretextual reason, whereas it retained younger employees for more significant performance deficiencies, and other violations.

70. Defendant engages is a practice of hiring substantially younger employees as compared to Plaintiff.

71. Plaintiff's age was a factor in Defendant's decision to fire her.

72. Defendant's alleged reason for terminating Plaintiff was a pretext for age discrimination and retaliation.

73. Defendant's discrimination and retaliation denied Plaintiff the opportunity for continued employment and adversely affected her compensation, terms, conditions, and privileges of employment in violation of the Elliott Larsen Civil Rights Act, MCL 37.2101, *et seq*.

74. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injuries and is entitled to damages.

WHEREFORE, Plaintiff Petrina Davis-Burnett, by and through counsel, respectfully requests that this Honorable Court enter a Judgment in her favor against Defendant, for the following damages:

A. compensation for her loss of wages;

B. compensation for loss of fringe benefits;

C. compensation based on her earning potential;

D. emotional distress and other non-economic damages;

E. other consequential and compensatory damages; and

F. statutory attorney fees.

## JURY DEMAND

Plaintiff Petrina Davis-Burnett, by her attorney James C. Baker of Sterling Attorneys at Law, P.C., demands a trial by jury.

        Respectfully submitted,

        STERLING ATTORNEYS AT LAW, P.C.

        By: /s/James C. Baker
            James C. Baker (P62668)
            Attorney for Plaintiff
            33 Bloomfield Hills Pkwy., Ste. 250
            Bloomfield Hills, MI 48304
            (248) 644-1500

Dated: October 19, 2023